UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

HENRY A. CAULEY                               )
2235 Meridian Street                          )
Falls Church, VA 22046,                       )
                                              )  Civil Action No.:
         Plaintiff,                           )
                                              )
    v.                                        )
                                              )
CONSERVATION INTERNATIONAL                    )
FOUNDATION,                                   )
2011 Crystal Drive, Suite 600                 )
Arlington, VA 22202                           )
     Serve: Corporate Creations, Network, Inc., )
     425 W. Washington Street, Suite 4,
     Suffolk, Virginia 23434

         Defendant.

## COMPLAINT

The Plaintiff, Henry A. Cauley, by his counsel, files this Complaint pursuant to Federal Rules of Civil Procedure 8, and states the following cause of action against the Defendant, Conservation International Foundation.

**I.   The Parties**

1. Plaintiff Henry A. Cauley is an individual, who was formerly employed by Defendant, and Plaintiff currently resides at 2235 Meridian Street, Falls Church, VA 22046.

2. Defendant Conservation International Foundation is incorporated in the Commonwealth of Virginia and has its headquarters at 2011 Crystal Drive, Suite 600, Arlington, VA 22202. Defendant's registered agent is Corporate Creations Network Inc., 425 W. Washington Street, Suite 4, Suffolk, Virginia.

**II.  Jurisdiction & Venue**

3. This is an action based on a claim of illegal age discrimination and retaliation in violation

of the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621 et seq, and this this court has jurisdiction pursuant to 28 U.S.C. § 1331.

4. Venue is proper as Defendant's principal place of business is in Arlington, Virginia.

5. Plaintiff Cauley has fulfilled all conditions precedent to the institution of this suit, and has satisfied all jurisdictional prerequisites to the maintenance of this action. Plaintiff Cauley filed his Charges with the EEOC, and the EEOC on March 2, 2021 issued a Right to Sue letter to Plaintiff, attached hereto as Exhibit A.

III. Statement of Facts

6. Plaintiff Cauley was employed by Defendant from 2016 through and including July 1, 2020. The Plaintiff also applied for employment with Defendant for the job of Executive Vice President of Global Programs and was denied that job on September 2, 2020. Plaintiff also on September 10, 2020 was denied employment by Defendant for the job of Vice President Field Project Delivery which the Plaintiff also applied for.

7. Plaintiff Cauley at the time of his job termination by Defendant was 65 years old, and he was 65 years old at the time of Defendant's refusal to hire him for two open positions.

8. Plaintiff Cauley was extraordinarily successful in his work for Defendant, as reflected by the objective numbers. Plaintiff Cauley was in charge of The Center for Environmental Leadership in Business ("CELB") which for Fiscal Year ("FY") 2019 had revenues of $31 million, (the target was $25 million) and for FY 2020 the projected revenues at the time of Plaintiff Cauley's termination of employment was $35 million (the target was $23 million). Moreover, the week before he was informed of his termination, Plaintiff Cauley was informed by Proctor and Gamble that they had a strong interest in providing a 10-year $150 million commitment to Conservation International, and Mr. Cauley

4828-3577-6235 v. 1

informed CEO M. Sanjavan of this wonderful news.

9. Defendant's articulated reasons for Mr. Cauley's termination are pretext for age discrimination. Indeed, Defendant at times gave three different reasons for terminating Plaintiff Cauley's employment, showing they were just fabrications, and moreover, all three were patently untrue. Further, Defendant's stated reasons for their failure to hire Plaintiff Cauley to two subsequent positions to which he applied are pretext for age discrimination and in retaliation for his charge of age discrimination. Plaintiff Cauley was by far more qualified than the two much younger persons who were given the positions. This is part of a blatant pattern of age discrimination at Defendant under the leadership of CEO M. Sanjayan.

10. Defendant has offered at least three different explanations directly to Plaintiff Cauley and to the staff of Defendant for the reorganization and dismissal of Plaintiff Cauley: 1) Pandemic-related budget cuts; 2) Plaintiff Cauley's lack of commitment to Defendant's mission, and 3) Strategic re-alignment based on a changing "corporate climate for sustainability and greening practices." That Defendant repeatedly changes its explanation makes clear they are pretextual for age discrimination. Further, upon closer inspection, none of these explanations hold up to scrutiny.

11. Defendant's refusal to hire Plaintiff Cauley for the two open positions is clear retaliation for his claim of discrimination as well as age discrimination. Plaintiff Cauley has substantially better qualifications than the two persons hired, and the only quality the two hires have over Plaintiff Cauley is they are significantly younger than Plaintiff Cauley.

12. For the Executive Vice President for Global Programs position, Defendant opted to hire Jack Hurd. Mr. Hurd does not have the experience that Plaintiff Cauley has with

4828-3577-6235 v. 1

conservation outcomes like acres conserved or square kilometers of ocean protected. Mr. Hurd does not have the experience that Plaintiff Cauley has in successful engagement with companies. A few examples from Plaintiff Cauley's resume are as follows:

- Hired and managed The Pew Charitable Trusts' ("Pew") Australian staff in establishing eight separate projects with a strategy that has <u>to date conserved 250 million acres of land and 99 million acres (400,00 square kilometers) of sea.</u> Key strategies included a ranger program for disenfranchised aboriginals and a unique agreement with cattle ranchers in Queensland.

- In Somalia, created an organization to introduce fuel conserving wood and charcoal burning stoves to reduce the health impacts and improve the livelihoods for women in the refugee camps. A majority of employees were students from the national university. Ultimately, the <u>stove designs became the stoves of choice throughout the country</u>.

- At Defendant, led the development of a strategy for reducing the emissions from major carbon dioxide emitters. The biggest win was <u>a company that committed to reduce emissions by 100 million tons of CO2eq</u>.

13. With regard to the position of Vice President of Field Delivery and Monitoring, it was given to Tracey Farrell. With all due respect to Ms. Farrell, her experience pales in comparison to the experience of Plaintiff Cauley. He has hands on project delivery experience in over 30 countries and for the nearly 10 years he spent at The Pew Charitable Trusts, he spent nearly half his time setting up and managing one of Pew's most successful conservation projects and the other half as a senior officer in Pew's Planning and Evaluation team which specialized in strategic planning, monitoring, and evaluation across all of Pew's programs.

14. In Plaintiff Cauley's 40-year career, this is the first and only time that he has sought a legal remedy to an employment situation. He is doing so as a result of the egregious age discrimination by CEO Sanjayan, which unfortunately was part of a clear and intentional pattern of CEO Sanjayan eliminating older workers in an attempt to have Defendant

4

appear younger. This discrimination is part of CEO Sanjayan's effort to cultivate an appealing image to younger donors and organizations who the CEO believed sought a younger image. A review of the ages of the employees who have been terminated and hired since CEO Sanjayan took over Defendant makes the pattern all too clear.

15. One of the Defendant's three different reasons for Plaintiff Cauley's termination was re-alignment to address corporate engagement on climate issues. The irony of this alleged reason is that Plaintiff Cauley was a leader in this field.  Plaintiff Cauley's work on his own or through his team include:

- Engagement with companies and the Moore Science Center on water issues in China, global climate issues, and biodiversity conservation targets with oil and gas companies. As one example, Plaintiff Cauley worked with David Mclaughlin to bring 'science to business', given Defendant's deep science expertise. One iteration of this occurred through Plaintiff Cauley's arrangement of resources and relationships so Mr. McLaughlin could develop the Palm Oil Risk Tool (PORT). Development of PORT required the direct and significant engagement of the Moore Science Center team and the Indonesia field office (as a significant amount of palm oil is grown in Indonesia).

- Partnership with field offices, as Plaintiff Cauley knew that companies were interested in gaining local knowledge. A partial list of the field offices he and his team worked with include: Peru, South Africa, Liberia, Botswana, Brazil, Guyana, China, Colombia, Mexico, and Kenya.

- Work with the Communities and Conservation Center (run by Kristen Walker Painemilla) and a company in Colombia to set a baseline for their social performance and engaged Ms. Painemilla's team as Plaintiff Cauley negotiated with companies like BHP and Shell.

- Regular advisement of Defendant's Senior Vice President for Oceans, Aulani Wilhelm, and her team given Plaintiff Cauley's experience on oceans and companies involved in fisheries and aquaculture issues.

- Development of a new area of work with fashion companies (e.g., Kering). Plaintiff Cauley brought in Helen Crowley and helped her work with the science team and secure the resources to position Defendant as the leader in this sector.

- Sustained a close working partnership with Agustin Silvani's Conservation Finance team, enabled by Plaintiff Cauley's relationships with division leaders. On many

      corporate engagement deals related to climate finance, Plaintiff Cauley's team would manage the overall relationship while Mr. Silvani's team provided technical assistance (with, e.g., BHP, Shell, Salesforce, United Airlines, Disney, and others).

- Engagement with numerous companies across sectors. A partial list of the companies that Plaintiff Cauley or members of his team engaged, regularly on more than one project, and other departments that were involved in the work with the companies includes:

a. Walmart (science, oceans, field (i.e., one or more field offices, e.g., Indonesia), climate team, communications, policy);
b. Starbucks (science, field, conservation finance, communications, communities and conservation, EU office, climate team);
c. United Airlines (science, field, communications, policy, conservation finance);
d. Disney (field, science, conservation finance, communications);
e. Royal Dutch Shell (conservation finance, field, science, climate team, policy, communications, EU office);
f. BHP (field, science, policy, communications, climate team, communities and conservation, communications);
g. BP (field, policy, climate team, conservation finance, communities and conservation);
h. Exxon (field, science, policy, communications);
i. Proctor & Gamble ("P&G") (conservation finance, field, science, climate team, communications); and,
j. Apple (field, conservation finance, communications)

16. Moreover, the alleged reorganization was not a reorganization at all. In reality, an examination of the reorganization shows that about two-thirds of the employees in Plaintiff Cauley's group, CELB, went to the "new" Center for Sustainable Lands and Water. This division has remarkably the same mandate that CELB had: improving industry practices and promoting sustainable sourcing. Furthermore, the Vice President who was chosen to manage the Center for Sustainable Lands and Water, Bambi Semroc, was a direct report of Plaintiff Cauley's and far less experienced in company engagement during her 17-year career than Plaintiff (Ms. Semroc has spent the vast majority of her 15 years at Defendant on one commodity– coffee). Another illustration of Defendant's pattern of age discrimination is that Ms. Semroc, in her 40s, was chosen

6

to lead this division despite two more qualified individuals in their 50s (John Buchanan and Scott Henderson) who were bypassed and now report to her.

17. The approach of using a reorganization to terminate older employees fit a pattern CEO Sanjayan has followed with at least 6 additional older employees. Moreover, the reorganization in this case actually increased costs, increasing the number of senior management by four.

18. As part of his effort to remove Plaintiff Cauley because of his age, CEO Sanjayan had Plaintiff Cauley delay an announcement of a major successful fund-raising effort so as to avoid giving credit to Plaintiff Cauley's success, particularly since it was a week right before informing Plaintiff of the termination of Plaintiff's employment. The ultimately large deal with Proctor and Gamble (in June, thought to be about $150 million) originated when two members of Plaintiff's Cauley's team, Dave Mclaughlin and John Buchanan, arranged a meeting in Defendant's offices with two individuals from P&G, one Jack McAneny, the Director of Sustainability. The most important part of the meeting was a discussion of "natural climate solutions" to address the climate crisis. Mr. McAneny after the meeting communicated with Plaintiff Cauley to finalize the deal with Proctor and Gamble.

19. On June 11, 2020, CEO Sanjayan in an all-CI town hall meeting stated that seven positions were being eliminated in the Arlington office. Of those seven, four were over age 50. These four do not include Yves Pinsonneault and Alberto Lora referenced above whose positions ended on June 30, 2020. Thus, this makes six of nine positions terminated June 30/July 1 were individuals over 50.

20. Other older workers were also discriminated against, including but not limited to:

- Greg Stone, ~ age 60, Executive Vice President and Chief Scientist for Oceans, a reorganization in late 2017 put in place a new SVP for Oceans undermining Greg's leadership which eventually led to his leaving the organization in February 2018. Tenure: 9 years 6 months

- Kurt Lonsway, ~ age 60, Vice President Green Climate Fund, Kurt was dismissed when, through a reorganization, his position was combined with that of the VP for Global Environment Fund. Dismissal was September 2018. Tenure 1 year 6 months

- Ladd Connell, ~ age 60, Director, Multilateral Programs. A reorganization in 2017 forced Ladd to apply for a new position reporting to a VP for public funds based in Europe. His replacement continues to be based in Arlington, VA. Tenure 8 years 3 months

- Justin Ward, ~ age 60, Senior Director and Deputy for US Government Policy. Justin retired in June 2018 for reasons, as he expressed to Plaintiff Cauley, that were based on feeling marginalized within his group. His position was not refilled. Tenure 18 years 3 months

- Yves Pinsonneault, ~ age 54, VP Sustainable Landscapes and Seascapes. Yves managed a program that was dissolved April 2019, and he was made a "Fellow" reporting to another VP. That position was ended effective June 30, 2020. Tenure: 17 years 6 months

- Alberto Lora, ~age 63, Senior Director operations group. Alberto reports up to the HR lead and during May 2020 it was announced that re-structuring had eliminated his position. Tenure: 33 years

21. Defendant under CEO Sanjayan has a long history of using reorganizations as a cover to eliminate older workers. Mr. Lonsway was let go at age 60+ when two funding groups were combined. Mr. Connell at age 60+ was let go due to "reorganization of the public funding group. Mr. Pinsonneault was let go after his department was dissolved and he was put on a short-term contract. Mr. Lora was let go at age 60+ due to a 'realignment' of his team. Mr. Stone and Mr. Ward left the organization after feeling that it was only a matter of time before they were pushed out.

22. There are other cases too: Edith Mebiama (age 54) was on Plaintiff Cauley's team and was dismissed on July 1, 2020 despite the importance of her role in managing the

4828-3577-6235 v. 1

financial side of CELB. Since her departure, the remaining team, the Center for Sustainable Lands and Water, has repeatedly reached out to her for help. Ines Castro, age 60+, was also terminated on July 1 through the reorganization. Ki Tremaine, age 60+, was let go due to the reorganization.

23. CEO Sanjayan believed he could discriminate based on age without any accountability. This is especially reflected by the comment CEO Sanjayan made upon terminating Plaintiff Cauley. Upon learning of his termination, Plaintiff Cauley noted he was being terminated despite is successful work and a prior denial by Conservation International leadership that there was going to be any reorganization. In response, CEO Sanjayan said, "Really Hank, do you think anyone is going to care about this issue at this time?" This statement clearly references CEO Sanjayan's belief that no one cared about older workers

## FIRST CLAIM FOR RELIEF

(Age Discrimination and Retaliation in Violation of ADEA)

24. Plaintiff repeats and re-alleges the allegation contained in the proceeding paragraphs above as if fully set forth herein.

25. Defendant, through its agents, servants and employees, discriminated against Plaintiff in the terms and conditions of his employment based on his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, including terminating his employment with Defendant because of his age, and refusing to hire Plaintiff for two jobs he applied for with Defendant and for which he was more qualified than the younger persons who were hired. The Defendant's actions were in knowing or reckless disregard for whether its conduct was prohibited by statute, was done wantonly, oppressively and

9

4828-3577-6235 v. 1

with actual malice, and constituted willful violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621.

## SECOND CLAIM FOR RELIEF

(Retaliation in Violation of the ADEA)

26. Plaintiff repeats and re-alleges the allegation contained in the proceeding paragraphs above as if fully set forth herein.

27. Defendant's refusal to hire Plaintiff for two jobs he applied for with Defendant and for which he was more qualified than the younger persons who were hired, was in retaliation for his filing a charge of age discrimination and pointing out Defendant's illegal pattern of age discrimination, which relation was done in knowing or reckless disregard for whether its conduct was prohibited by statute, was done wantonly, oppressively and with actual malice, and constituted willful violations of and in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621.

As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, Plaintiff sustained permanent and irreparable harm, resulting in loss of his employment, which caused him to sustain loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, interest, he suffered pain and suffering and loss of reputation, and compensatory and punitive damages. Defendant intentionally and willfully discriminated against and retaliated against Plaintiff Cauley.

WHEREFORE, Plaintiff demands judgement:

A. Reinstating Plaintiff's employment and enjoin Defendant from discriminating against Plaintiff on the basis of his age, and/or awarding front pay.

B.      Awarding Plaintiff back pay, and reinstatement or front pay;

C.      Awarding Plaintiff compensatory damages equal to $10 million, including but not limited to damages for emotional distress and damage to reputation;

D.      Awarding Plaintiff liquiated damages;

E.      Awarding reasonable attorney's fees, costs, and expenses; and

G.      Grant such other legal and equitable relief to the Plaintiff as the Court may deem just and equitable.

## JURY DEMAND

Plaintiff demand trial by jury of all issues as of right by a jury.

By /s/ Lawrence P. Postol  
Lawrence P. Postol  
Virginia Bar No. 21340

Postol Law Firm, P.C.  
6842 Elm Street  
McLean, VA 22101  
(571)-378-6366  
Lpostol@PostolLaw.com

Dated: May 24, 2021